UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| H.M. & I.B., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO. _____ |
| RADHESHVAR, LLC, d/b/a | ) | |
| MOTEL 6, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs file this Complaint and show the Court the following:

1.

In 2014, when they were both 18 years old, Plaintiffs were trafficked for sex at the Motel 6 located at 2820 Chamblee Tucker Road, Atlanta, Georgia 30341. Given the nature of the case, Plaintiffs are identified in this Complaint by their initials to prevent public disclosure of their names. Plaintiffs' counsel will disclose Plaintiffs' full names to defense counsel as soon as they are known or as soon as an appropriate protective order is in place.[1]

---

[1] Plaintiffs have concurrently filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include Plaintiffs' sex trafficking. Plaintiffs' anonymity will provide for their own personal safety and will protect Plaintiffs from the public disclosure of details that are intimate and personal in nature.

2.

Defendant Radheshvar, LLC, ("Defendant" or "Motel 6. Defendant can be served via its registered agent: Rupa Patel, 285 Country Club Dr., Stockbridge, Georgia 30281.

3.

Jurisdiction and venue are proper as to Defendant.

4.

At all times herein, Defendant owned, operated, maintained, controlled, managed, or was responsible for securing the Motel 6, a hotel from which it benefited financially.

5.

Defendant knew of the rampant sex trafficking and prostitution at the hotel for years, before, during, and after Plaintiffs' trafficking. Defendant knew because

(a)   Defendant knew the facts of these specific Plaintiffs while they were trafficked for sex at the hotel;

(b)   its employees knew of and permitted sex trafficking and prostitution to occur at the hotel;

(c)   Defendant knew the facts of multiple other sex trafficking victims at the hotel before, during, and after Plaintiffs;

(d)   Defendant knew about frequent and ongoing similar crime occurring at the hotel;

(e)   Defendant knew about the reports of hotel guests regarding sex trafficking and prostitution-related activities;

(f)   Defendant had knowledge of sex trafficking generally in the Atlanta area and at this hotel specifically.

6.

Sex trafficking and prostitution were common occurrences at the Motel 6 and Defendant chose to ignore, allow, condone, facilitate, support, or permit such activity at the hotel. Defendant is liable to Plaintiffs for its actions and failures to act. Defendant's liability to Plaintiffs is straightforward:

(a)   The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person ***knew or should have known*** has engaged in an act in violation of" the TVPRA. Defendant knowingly benefited from participation in a venture that it knew or should have known engaged in an act in violation of the TVPRA. While operating the hotel, Defendant (i) rented rooms to Plaintiffs' traffickers so Plaintiffs could be beaten and sold for sex at the hotel, (ii) collected fees for rental

of those rooms, and (iii) did so despite what it knew or should have known about Plaintiffs being victims of sex trafficking at the hotel. As a result, Defendant is liable to Plaintiffs for their damages under the TVPRA.

(b)   The Motel 6 constituted both public and private nuisances under Georgia law because the hotel negligently or recklessly turned a blind eye and permitted illegal activities to occur at the hotel, including rampant prostitution, crimes against women, dangerous illegal activity, drugs, violence, harboring missing and runaway underage girls, harboring wanted felons, sex crimes, and sex trafficking. As a direct result of this nuisance, Plaintiffs were sold for sex at the Motel 6, causing their substantial harm.

7.

Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation is that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who were actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant and the Motel 6.

## OPERATIVE FACTS

**I.      Plaintiffs' trafficking at the Motel 6.**

8.

Over the course of several months in 2014, when they were both 18 years old, Plaintiffs were forcibly sold for sex at the Motel 6 until the end of October that year. Plaintiffs' traffickers were older men who belonged to multiple violent gangs. Plaintiffs' traffickers were frequently violent with them at the Motel 6 and often threatened to kill Plaintiffs if they tried to escape.

9.

Employees at the Motel 6 assisted and facilitated Plaintiffs' trafficking. They were friendly to and interacted frequently with Plaintiffs' traffickers. Hotel staff were paid to act as lookouts for Plaintiffs' traffickers.

10.

While Plaintiffs were trafficked at the Motel 6, they collectively were sold for sex to between 10 and 25 men each day. Defendant knew or should have known that the number of daily, older, male visitors to the room was clearly indicative of sex trafficking.

11.

While Plaintiffs were trafficked for sex at the Motel 6, they exhibited numerous well-known and visible signs of a sex trafficking victim, of which Defendant knew or should have known, including their young ages and inappropriate

appearances, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, loitering, soliciting male patrons, and monitoring and control of Plaintiffs by their traffickers.

## II.    Defendant's knowledge of prior crime at the Motel 6.

### 12.

The Motel 6 was well known for crime, prostitution, and sex trafficking. Defendant had actual and constructive knowledge of criminal activity existing on the property and in the surrounding area prior to Plaintiffs' trafficking.

### 13.

Defendant owned and operated the Motel 6 and employed the employees there, giving it specific and direct knowledge of prior and ongoing crime, including prostitution and sex trafficking occurring at the hotel during that period.

### 14.

Before Plaintiffs' sex trafficking at the Motel 6, prostitution and sex trafficking were frequent occurrences at the hotel, obvious to employees and guests.

### 15.

Defendant provided a market and beds for sex traffickers to sell victims to buyers of commercial sex. That is why Plaintiffs' sex traffickers brought them to the Motel 6 to be sold for sex for months.

16.

Defendant knew or should have known of sex trafficking, prostitution, and other criminal activity existing at the Motel 6 prior to Plaintiffs' sex trafficking there.

### III.   Defendant's knowledge of sex trafficking generally.

17.

Defendant knew or should have known of the existence of sex trafficking and its illegality more than 20 years ago, since the passage of the Trafficking Victims Protection Act in 2000 and the United Nations' adoption of the Palermo Protocol to prevent, suppress, and punish trafficking in persons.

18.

Defendant knew or should have known that during the relevant period Atlanta was a national hub of sex trafficking and that the crime was prevalent in the city, including at the Motel 6. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of the largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.[2] Over the last two decades, sex trafficking has generated billions of dollars

---

[2] See Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, Mar. 13, 2014, https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM (last visited Sept. 9, 2024); *see also* Meredith Dank et al., *Estimating the Size and Structure of the*

in illicit profits in metro Atlanta alone. Defendant has received and retained some of those illicit profits through renting hotel rooms used for the trafficking of Plaintiffs.

19.

Defendant knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, [] particularly child sex trafficking,"[3] and as "the number one city for child sex trafficking."[4]

20.

Defendant knew or should have known that hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers." *City of Los Angeles v. Patel*, 576 U.S. 409, 428–29 (2015) (Scalia, J., dissenting, joined by Roberts, C.J. and Thomas, J.).

---

*Underground Commercial Sex Economy in Eight Major US Cities* 30–32 (2014), https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited Sept. 9, 2024).

[3] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month (Jan. 29, 2015), https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited Sept. 9, 2024).

[4] *Id.*

21.

Defendant knew or should have known the following: The National Human Trafficking Hotline has reported that over 91 percent of the calls it received involving hotels and motels reported sex trafficking, and another 2.6 percent reported a combination of sex and labor trafficking.[5] A 2012 study found that 63 percent of trafficking incidents occurred in hotels.[6] And the Polaris Project found that "75 percent of [trafficking] survivors . . . reported coming into contact with hotels at some point" during their exploitation.[7] Unfortunately, "94 percent" also "disclosed they never received any assistance, concern, or identification from hotel staff."[8]

---

[5] National Human Trafficking Hotline, *National Hotline Cases Occurring in Hotels and Motels: United States 1/1/2012–12/31/2016*, at 3, https://humantraffickinghotline.org/sites/default/files/Hotel%20and%20Motel%20Topical.pdf (last visited Sept. 9, 2021).

[6] Jon Conte et al., *Businesses Ending Slavery and Trafficking, Inhospitable to Human Trafficking Program Evaluation* 5 (July 2014), [https://web.archive.org/web/20210511135432/https://www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11_without_appendix.pdf].

[7] Polaris Project, *On-Ramps, Intersections, and Exit Routes: A Roadmap for Systems and Industries to Prevent and Disrupt Human Trafficking* 16 (2018), https://polarisproject.org/wp-content/uploads/2018/08/A-Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-Trafficking-Hotels-and-Motels.pdf (last visited Sept. 9, 2024).

[8] *Id.* at 23.

22.

Defendant knew or should have known that attorneys for the hotel industry estimated and reported to hotel industry representatives that eight out of ten human trafficking arrests occur in or around hotels,[9] and that the industry had been warned, among other things, to "Make sure hotel not complicit," "Manager not looking the other way," and "No pay off for silence or lack of curiosity."[10]

23.

Defendant knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched The Code of Conduct for the Protection of Children from Sexual Exploitation in Travel and Tourism (the "Code") in the United States in 2004.[11]

24.

Defendant knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to identify, address, and deter sex trafficking, identifies six reasonable and logical steps hotels and motels can take:

---

[9] Rich Keating, *Human Trafficking: What Is it and How It Impacts the Hospitality Industry* 6 (presentation at AHIA Sprint Conference 2013), [https://web.archive.org/web/20191030203754/http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983].

[10] *Id.* at 19.

[11] *See The Code*, ECPAT-USA, www.ecpatusa.org/code/ (last visited Sept. 9, 2024).

(a) establish corporate policy and procedures against sexual exploitation of children;

(b) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

(c) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

(d) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

(e) support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

(f) report annually on the company's implementation of Code-related activities.

25.

Defendant knew or should have known that ECPAT is only one of several high-profile organizations that have for years given hotels and motels the tools to address the scourge of sex trafficking at hotels.

26.

Defendant knew or should have known that during the relevant period the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and respond to human trafficking. DHS's guidelines instruct

housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

(a)    persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, or unusual behavior;

(b)    persons who lack freedom of movement or are constantly monitored;

(c)    persons who have no control over or possession of money or ID;

(d)    persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

(e)    requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

(f)    the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

(g)    extended stay with few or no personal possessions in the room;

(h)    excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

(i)    the same person reserves multiple rooms;

(1)    a room is rented hourly, less than a day, or for an atypical extended stay;

(2)    attempts to sell items to or beg from patrons or staff;

(3)  cars in the parking lot regularly parked backward, so the license plates are not visible;

(4)  loitering and solicitation of male patrons;

(5)  waiting at a table or bar and picked up by a male (trafficker or customer);

(6)  persons asking staff or patrons for food or money; and

(7)  persons taking cash or receipts left on tables.

27.

Without a market—a conveniently located and anonymous place to confine humans, exchange money, and have sex—sex trafficking would cease to exist. In Plaintiffs' case, Motel 6, for a fee, provided this market for Plaintiffs to be confined and sold.

## COUNT I: STATUTORY LIABILITY UNDER 18 U.S.C. § 1595

28.

Plaintiffs incorporate the paragraphs above as if fully restated herein.

29.

In violation of § 1595(a) of the TVPRA, Defendant knowingly benefitted from participation in a venture that Defendant knew or should have known engaged in acts in violation of the TVPRA.

30.

Defendant knowingly benefitted from Plaintiffs' sex trafficking by receiving revenue generated by the operation of the Motel 6, including the revenue generated for the rooms in which Plaintiffs were trafficked.

31.

Defendant participated in a hotel venture and knew or should have known that their operation of the hotel violated the TVPRA by harboring and maintaining Plaintiffs so that they could be sold for sex at the Motel 6.

32.

The venture in which Defendant participated was in or affecting interstate commerce.

33.

Defendant knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant's agents, employees, and representatives, participated in Plaintiffs' sex trafficking at the Motel 6. Defendant should have known of this participation.

34.

Defendant knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant' agents, employees, and representatives knew

or should have known of other sex trafficking and sex crimes at the hotel before and while Plaintiffs were trafficked for sex at the Motel 6.

35.

Defendant is directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of their agents and representatives.

36.

Plaintiffs have suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant's participation in this venture.

37.

Defendant is liable to Plaintiffs for their damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

38.

Defendant is jointly and severally liable for damages arising from the indivisible injuries they caused Plaintiffs, whose damages were proximately caused by the acts discussed in this count.

**COUNT II: NUISANCE**

39.

Plaintiffs incorporate the paragraphs above as if fully set forth herein.

40.

O.C.G.A. § 41-1-1 provides that "[a] nuisance is anything that causes hurt, inconvenience, or damage to another and the fact the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man."

41.

O.C.G.A. § 41-1-2 provides that "[n]uisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals."

42.

O.C.G.A. § 41-1-3 provides that "[a] public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action."

43.

O.C.G.A. § 41-1-4 provides that "[a] private nuisance may injure either a person or property, or both, and for that injury a right of action accrues to the person who is injured or whose property is damaged."

44.

O.C.G.A. § 41-3-1 provides that "[w]hosoever shall knowingly erect, estab-lish, maintain, use, own, or lease any building, structure, or place for the purposes of sexually related charges[12] shall be guilty of maintaining a nuisance; and the build-ing, structure, or place, and the ground itself in or upon which such sexually related charges occurred or were conducted, permitted, carried on, continued, or shall exist, and the furniture, fixtures, and other contents of such building or structure shall be deemed to be a nuisance."

### Public Nuisance

45.

The Motel 6's history of rampant crime and illegal sex activity created a spill-over effect that led to other crime occurring in the surrounding area.

46.

The Motel 6 caused or contributed to a blighting effect on the surrounding community, so that the Motel 6 negatively damaged all persons who came within the sphere of operation of the crime, sex trafficking, and prostitution at the Motel 6, although the effects on each person may have varied.

---

[12] O.C.G.A. § 41-3-1 defines "sexually related charges" to mean trafficking a person for sexual servitude, public indecency, prostitution, keeping a place of prostitution, pimping, pandering, or masturbation for hire.

47.

The illegal prostitution and sex trafficking nuisance occurring at the Motel 6 had an appreciable blighting effect on the surrounding community, permitting persons of questionable character, and encouraged idleness, loitering, vagrancy, and had a tendency to breed crime and debauch the morals of the community.

48.

The acts and omissions of Defendant in permitting prostitution and sex trafficking at the Motel 6 caused special damages to Plaintiffs, as they were the victims of sex trafficking at Defendant' nuisance hotel and suffered damages to her health, including mental and emotional harm, pain and suffering, and Defendant is liable to Plaintiffs for all such damages.

### Private Nuisance

49.

Additionally, or in the alternative, the Motel 6 constituted a private nuisance because its operation at least injured the numerous victims of crimes that occurred there, including specifically victims of sex crimes, like Plaintiffs.

50.

The Motel 6 created or maintained a continuous or regularly repeated act or condition on the property (of similar past crimes and sex crimes), which caused Plaintiffs' injury.

51.

Among other things, Plaintiffs' traffickers selected this nuisance hotel as a good location to sell Plaintiffs for sex because this hotel was known to allow such activity to occur or the hotel failed to enact any measures to stop such activity from occurring.

52.

Thus, as a direct result of this hotel being a nuisance, with a history of many repeated crimes occurring at the property, Plaintiffs were sold for sex at this hotel and was harmed and damaged as a result of same.

### *Nuisance per se pursuant to O.C.G.A. § 41-3-1*

53.

The Motel 6 hotel constituted a statutory nuisance per se under Georgia law because the hotel knowingly or negligently turned a blind eye and permitted illegal sexually related crimes to occur at the hotel including rampant prostitution, pandering, pimping, and sex trafficking.

54.

Before and after the sex trafficking of Plaintiffs, Defendant failed to act on its knowledge of prior prostitution and sex trafficking, and failed to act to correct, prevent, or warn of the prostitution and sex trafficking occurring at the hotel, and the dangerous environment created on the property. Defendant's failure to take

appropriate action to remedy or reduce the danger to the public, including Plaintiffs, allowed the dangerous environment at the Motel 6 to continue to exist unabated, thereby creating a nuisance that continues to this day.

55.

Plaintiffs were directly harmed as a result of the Motel 6 being a nuisance hotel that permitted illegal sexual activity to occur there.

56.

Defendant is liable for nuisance (public nuisance, private nuisance, or statutory per se nuisance pursuant to O.C.G.A. § 41-3-1) by reason of its failure to remedy the dangerous condition of prostitution and sex trafficking that persisted over time as a continuous and repetitious condition and of which Defendant had express notice and knowledge, and whereby Plaintiffs were direct victims of such activity.

**DAMAGES**

57.

Plaintiffs incorporate the paragraphs above as if fully restated herein.

58.

As a proximate and foreseeable result of Defendant's violations of the TVPRA and Georgia law, Plaintiffs sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiffs bring each and every claim permissible under

Georgia and federal law against Defendant for their injuries suffered in the incidents at issue and seek to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general, and punitive damages permissible under Georgia and federal law. Plaintiffs seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia and federal law, including, but not limited to:

(a)    Personal injuries;

(b)    Past, present, and future conscious pain and suffering;

(c)    Loss of enjoyment of life;

(d)    Medical expenses;

(e)    Mental anguish and emotional distress;

(f)    Loss of past, present, and future wages;

(g)    Incidental expenses; and

(h)    All special, compensatory, economic, punitive, and other damages permissible under Georgia and federal law.

59.

Plaintiffs are entitled to an award of punitive damages without limitation or cap because the actions of Defendant and its employees were willful and wanton and

showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

60.

Defendant's actions evidence a species of bad faith. Defendant was and is stubbornly litigious and has caused Plaintiffs undue expense. Thus, Plaintiffs are entitled to recover their necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. *See, e.g.*, O.C.G.A. §§ 13-6-11, 9-11-68 and 9-15-14, and 18 U.S.C. § 1595(a). Furthermore, Plaintiffs are entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia and federal statutory and common laws.

WHEREFORE, Plaintiffs pray for a judgment to be awarded to them and against Defendant and for the following:

(a)  Process issue as provided by law;

(b)  Plaintiffs be awarded actual damages from Defendant in amounts to be shown at trial;

(c)  Plaintiffs be awarded from Defendant all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury;

(d)  Plaintiffs be awarded a trial by jury; and

(e)    Plaintiffs have such other relief as this Court deems just and appropriate

under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

Respectfully submitted on September 9, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Patrick J. McDonough*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

Respectfully submitted on September 9, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Patrick J. McDonough*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile